# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

Civil docket No. 16-1546; 16-1977

---

ANDRE BISASOR

Plaintiff - Appellant

V.

DANSLAV SLAVENSKOJ; HARVARD EXTENSION SCHOOL / HARVARD
UNIVERSITY; ROBERT H. NEUGEBOREN; MICHAEL SHINAGEL; HUNTINGTON
LAMBERT; SHIRLEY R. GREENE; MARGARET C. ANDREWS; PHILIP HARDING;
ASHLEY R. POLLOCK; KRISHAN ARORA; KEN VEDAA

Defendants - Appellees

---

# EMERGENCY MOTION FOR STAY OF STATE COURT PROCEEDING PENDING APPEAL TO THE FIRST CIRCUIT WITH MEMORANDUM INCORPORATED

1. I, Andre Bisasor, the plaintiff-appellant in the above captioned cases, hereby submit this motion for stay pending appeal to the First Circuit.

2. NB: I hereby request an emergency determination of this motion (if possible, by end of the business today), given the imminence of the hearing on the motions to dismiss in state court on November 10, 2016 (tomorrow).

## I. ABBRIEVATED PROCEDURAL HISTORY

3. On November 18, 2014, I filed the original complaint pro se, as a placeholder, without any legal help. This was in the Suffolk Superior Court of Massachusetts ("State Court")

4. On June 19, 2015, I served the first amended complaint on defendants, which was amended once as a matter of course (i.e. before service of process was done or required), pursuant to the rules of procedure, in state court.

5. On August 27, 2015, I filed for bankruptcy in the Federal Bankruptcy Court For The District of Eastern Massachusetts ("Bankruptcy Court").

6. On September 3, 2015, I filed a suggestion of bankruptcy in state court.

7. On September 4, 2015, Judge Robert Gordon entered a stay on this case in the state court. He ordered that the entire proceedings in state court be stayed based on application of the automatic stay and that the stay will not be lifted until I completed my bankruptcy or until further orders of the bankruptcy court.

8. Customarily, every 3 months judges are rotated within the state court system. Usually two judges rotate back and forth interchangeably every 3 months within each session of the state court system.

9. On October 1,2015. Judge Peter Lauriat rotated into this case in state court. Judge Robert Gordon rotated out.

10. On October 1, 2015, Harvard filed a motion to lift the stay in state court.

11. On November 8 2015, Judge Peter Lauriat lifted the stay entered by Judge Gordon in state court. This was a reversal of Judge Gordon's entry of a stay to my case in state court.

12. On January 22, 2016, the case was removed to the Federal District Court for Massachusetts ("Federal District Court") under the statute that allows removal of a plaintiff-initiated case in state court into federal court by the plaintiff debtor.

13. Once in federal district court, Harvard requested a remand to state court.

14. Motion practice continued in federal district court for 6 months. I was not represented by counsel.

15. I filed a motion for stay in federal district court including application or extension of the automatic stay to my civil action. Harvard opposed. The federal district court denied the motion for stay.

16. On June 29, 2016, the case was remanded to state court by the federal district court judge who was on the case.

17. I immediately filed in the First Circuit Court of Appeals (The First Circuit) two appeals of these two categories of decisions that implicate the automatic stay applicability as well as the remand to state court itself.

18. These appeals are currently working their way through the First Circuit. No decision has yet been made on these appeals as the appeals process is still relatively in its beginning stages in the First Circuit. October 4, 2016, the First Circuit requested that I provide a reply to a show cause order to establish jurisdiction. The deadline to respond is November 18, 2016.

19. On August 1, 2016, I filed a motion for renewed application or extension of the automatic stay in state court, which was denied by Judge Peter Lauriat.

20. After other motions filed by defendants, a date was set for hearing on all motions to dismiss in state court for November 10, 2016 at 2pm.

## II. INTRODUCTION

21. I filed two sets of appeals via Notice of Appeal to the United States Court of Appeals for the Federal Circuit (First Circuit) from the orders entered by Judge Denise J. Casper in the federal district court.

22. I am requesting a temporary stay of the proceeding until the First Circuit can fully rule on a motion to stay pending appeal and until the First Circuit can determine whether the automatic stay applies or not.

23. I am with dealing with 5 motions to dismiss and 5 motions to dismiss hearings on November 10, 2016.

24. I am asking the First Circuit to enter a temporary stay to preserve the status quo so that these matters on appeal are not in danger of being made moot.

25. At the very least, I am requesting that the First Circuit enters a temporary stay until at least the First Circuit can rule on the show cause order due to this court on November 18, 2016.

26. If the November 10, 2016 motion to dismiss hearing is not stayed, without the trustee having an opportunity to join the case, then my case could be prejudiced if dismissed. It is difficult for me to prosecute this case while still in the process of completing my bankruptcy and while matters are in a state of limbo regarding whether the trustee will join or abandon the case.

27. I am pro se and I have to provide for my family. I also have a number of motions and pending proceedings in Bankruptcy court including a mediation and/or defense on an adversary proceeding as well as other matters related to coordinating with and finalizing certain important matters with the Chapter 7 trustee.  It is difficult to do all of that while also prepare and focus on the underlying civil lawsuit.

28. It has been difficult to get a lawyer on this case because this matter has some underlying complexity that makes it very expensive to have a lawyer represent me at this juncture. Also, very few lawyers want to get involved in a case where the trustee has not joined or abandoned the case.

29. However, I also have a settlement from a landlord-tenant dispute coming to me through the bankruptcy which will allow me to secure legal representation/assistance on this civil case.

30. I would rather have an attorney on the civil case rather than do this myself.

### III. SUMMARY OF ARGUMENTS FOR STAY PENDING APPEAL

31. The first circuit should enter a stay pending appeal because:

    a.  A stay should be entered because my position is that a counterclaim has been filed against me.

    b.  A stay should be entered because a violation of section 362(a) of the bankruptcy code's automatic stay provision has taken place and is taking place in the state court proceedings for my civil action for which I am the plaintiff.

    c.  The stay should be granted because the appeal will be made potentially moot if the case is dismissed at the state court level.

d. The stay should be granted because the rules of procedure provide that a case should not be dismissed without allowing adequate time for the real party in interest an opportunity to join, ratify or abandon the case. It would be a material injustice for this case to be dismissed because of my inability to retain legal representation due to a lack of financial resources and because the trustee was not allowed adequate time to join the case.

e. The stay should be granted because this is a novel area of law too important to ignore

f. The stay should be granted because of the interests of justice

g. The stay should be granted because only the federal first circuit court of appeals (and the US supreme court after it) has final ultimate authority to decide questions regarding the applicability of the bankruptcy automatic stay, not state courts. There have already been conflicting decisions regarding the application of the automatic stay in the state court.

## IV. AUTHORITY & EXPERTISE OF THE FIRST CIRCUIT TO ADDRESS ISSUES RELATED TO THE AUTOMATIC STAY

32. I am requesting relief from the First Circuit because the First Circuit, as a federal court of appeals that deals with appellate issues related to bankruptcy issues and the application of bankruptcy law to other venues, has the authority to determine the applicability of the automatic stay to my civil action in state court or whether or not the automatic stay can and should be extended or applied to my civil action in state court.

33. Given some of the arguments in this motion, relating to the intent of the automatic stay provision, the first circuit has the authority to decide such matters better than the state court.

34. Given the conflicting decisions in state court, where one Superior Court judge ruled that the automatic stay applied to my case and where another ruled that it did not, the issue is ripe for determination by the First Circuit which has the expertise to sort out the matter.

35. Given some of my arguments in this motion, relating to unusual circumstances exception and the immediate adverse economic consequences exception (as explained further below), as well as the arguments related to the trustee being the real party in interest and the anti-slapp action as a counterclaim that triggers the bankruptcy's automatic stay, among other things, the first circuit court is in a better position to determine those issues since the first circuit is more familiar with the nuances and the intent of the automatic stay provision of the bankruptcy code as enacted by congress.

36. Ultimately, the first circuit has more authority and jurisdiction to determine these issues than the state court because these issues directly implicate the interpretation and application of bankruptcy law.

37. The following case law demonstrates clearly the remedies available upon entry of an adverse state court decision from a state court pertaining to the automatic stay: "When a New York State court rules the stay inapplicable, the debtor has two remedies available: The debtor (i) "could have sought a stay of the decision pending appeal" (See CPLR 5519 [c]; cf. CPLR § 460.50), or (ii) "sought relief in the Bankruptcy Court in which he filed his petition." Skripek v. Skripek, supra; see also In re AUFCMP Church, 184 B.R. 207, 216 (Bankr. D. Del. 1995).".  This shows that it is perfectly reasonable and expected that if a plaintiff-debtor encounters an adverse decision pertaining to the automatic stay, he can either appeal the decision in state court or he can seek relief in the federal court or bankruptcy court in which he filed his petition. It is clear that I, as a plaintiff-debtor, did not have to take as final the state court judge's (Judge Peter Lauriat) decision regarding the automatic stay. It is my absolute and undeniable right to seek intervention of the first circuit court to determine the applicability of the automatic stay.

38. It is well-settled that federal courts have the final authority to determine the scope and applicability of the automatic stay.

# V. DETAILED ARGUMENTS FOR WHY THE FIRST CIRCUIT SHOULD GRANT A STAY PENDING APPEAL

## A. THERE IS A PENDING APPEAL TO THE FIRST CIRCUIT COURT OF APPEALS

39. The issue of whether the automatic stay would apply is a matter to be reviewed for the application of law. Consequently, it is best resolved once and for all by the First Circuit Court of Appeals.

40. In fact, there is a pending appeal in the First Circuit Court of Appeals that will impact the superior court proceedings. Consequently, the First Circuit could undo the remand to state court (under the collateral order doctrine) and the First Circuit could rule that the automatic stay applies to my case, especially in considering the fact that the First Circuit holds final and original (but non-exclusive) jurisdiction to determine such issues under Federal law. If the First Circuit were to do so, then any proceeding or ruling or decision made in state court prior to the First Circuit could cause a harm to me. Then I would also have to litigate these issues twice, which would waste/drain unnecessarily my limited resources and which would not redound to judicial economy. Thus the appropriate thing to do is allow the appeal to be completed and the First Circuit to decide these issues first.

41. There is a pending appeal in the First Circuit that will determine, among other things, if the federal district court erred in remanding this case back to state court and whether the automatic stay in federal court should have been applied to this case. **See Exhibit 5: Notice of Appeal and First Circuit assignment of case number.**

42. If the first circuit court rules in my favor, then this would impact the proceedings in state court and there could be irreparable harm to me if the state court makes any adverse rulings against me without the benefit of a final review and decision by the First Circuit Court of Appeals.

43. If this Superior Court rules on any motion before allowing the first circuit appeals court to weigh in, it would cause irreparable harm to me as the plaintiff. In the interest of fundamental fairness and justice, it seems that the correct outcome would be for the state court to stay its hand regarding

making a decision on any motion. Given that the state court is aware that I have exercised my right to appeal, then it would be unfair for the state court to ignore my attempt to appeal without allowing the first circuit appeals court to determine if the Federal District Court made an error in denying the motion to stay and in remanding the case back to state court because the First Circuit could rule that the case should not have been remanded and/or that a request for the automatic stay should not have been denied. Hence by definition, in ruling on whether the federal district court made an error, the first circuit also has authority to decide if therefore the automatic stay applies to the action in state court.

44. So, I hereby request that the first circuit finds that a stay should be applied until the first circuit rules on the matter as to whether the automatic stay applies. I hereby request that this Honorable Court grant an order staying all proceedings in state Suffolk superior court and thus put on hold any decision by the Superior Court related to any pending motions particularly any motions affecting dismissal of this case or any claims therein, pending appeal to the United States Court of Appeals for the First Circuit.

45. If this Court is not inclined to grant a longer-term a stay pending appeal, I hereby request a temporary stay until at least the first circuit reaches a decision regarding the show cause orders pending in the first circuit court i.e. which is due from me to the first circuit by November 18, 2016.

46.  [NB: Please note also that my appeal to the first circuit is proper under the collateral order doctrine and under section 1292a and section 1291 of the federal code].

47. The purpose of a stay pending appeal is to preserve the status quo pending appellate determination. (See McClendon v. City of Albuquerque, 79 F.3d 1014, 1020 (10th Cir. 1996)). A stay pending appeal does not "require the trial court to change its mind or conclude that its determination on the merits was erroneous" before holding that a stay pending appeal is warranted. (See St. Agnes Hospital v. Riddick, 751 F.Supp. 75, 76 (D.Md. 1990)).

48. NB: THE FIRST CIRCUIT HAS JURISDICTION BECAUSE ONLY THE FIRST CIRCUIT

COURT OF APPEALS HAS THE FINAL AUTHORITY TO MAKE A FINAL

DETERMINATION REGARDING THE APPLICABILITY OF THE AUTOMATIC STAY

SINCE IT IS A FEDERAL COURT OF APPEALS THAT HAS ORIGINAL BUT

NONEXCLUSIVE JURISDICTION OVER ISSUES RELATED TO BANKRUPTCY AND TO

ISSUES RELATED TO THE APPLICABILITY OF THE BANKRUPTCY CODE'S

AUTOMATIC STAY. i.e. Only the federal first circuit court of appeals (and the US supreme court

after it) has final ultimate authority to decide questions regarding the applicability of the

bankruptcy automatic stay, not state courts, especially since there have already been conflicting

decisions from two different superior court judges regarding the application of the automatic stay

in the state court.

49. Only the first circuit has the authority to set binding precedent regarding this matter for

Massachusetts and this region. No other court other than the US supreme court has ultimate

authority on this question. Neither the state court, not the federal district court.

50. Furthermore, in terms of finality, the critical question/issue is: "When and where would I be able to

appeal these decisions, if not now and if not here?" I certainly have the right to appeal in an

absolute sense so the question is if I don't have the right to appeal as of yet or at this time, then it

would be until such time that the case is closed and/or the case has ended. But after the case has

been remanded to state court, the case has become closed in the federal court and if the case gets

dismissed in Federal Court, my case thus would likely be immunized from appeal thereafter.

Moreover, if the case is dismissed, and I have to wait until the entire case is tried before I could

appeal, then the rights conferred by the automatic stay would be lost forever because by then my

bankruptcy would have been completed and closed. Thus there is no way around the force of the

compelling/inevitable conclusion that must result from tackling this question i.e. that not only is an

interlocutory appeal is warranted at this juncture but a stay pending appeal is also warranted. Otherwise, I will not be able to avail myself of the rights conferred by the automatic stay.

51. Moreover, any appeal at a later time will likely be frustrated and made moot by the "harmless error" doctrine. The harmless-error rule captures the common-sense notion that a legal error made by a lower court should not require a reversal on appeal if the legal error did not affect the ultimate outcome below. Therefore, on appeal, the harmless-error rule allows an appellate court to determine that the judgment below need not be reversed simply because of this technicality. The harmless-error rule and the final-judgment rule are thus interrelated.

52. Finally, an important reason for allowing the stay pending appeal to the First Circuit is the probable inadequacy of the state suit to protect my rights, since it is doubtful that the state court can finally adjudicate the issue of the applicability of the automatic stay since two judges already issued conflicting decisions on the applicability of the automatic stay. Only the federal courts can ultimately resolve the conflict pertaining to the applicability of the automatic stay.

## VI. REASONS WHY AUTOMATIC STAY SHOULD HAVE BEEN APPLIED TO MY CASE AND WHY IT IS LIKELY THAT APPELLANT WILL PREVAIL ON THE MERITS

53. I believe the District Court made errors of law and the arguments for why the automatic stay should be applied to my case are as follows:

_____

### A. COUNTERCLAIMS HAVE BEEN ASSERTED AGAINST ME IN THIS CASE AND THUS THE AUTOMATIC STAY APPLIES
_____

54. On August 31, 2015, Mr. Slavenskoj filed a Special Emergency Motion To Dismiss Plaintiff's Complaint Pursuant to Mass. Gen. Laws ch. 231, Section 59H. (See Exhibit 9 - Special Emergency Motion To Dismiss)

55. On closer look, this is the Massachusetts anti-Strategic Lawsuits Against Public Participation (SLAPP) statute which allows a petitioner to file a special motion to dismiss a complaint filed against him/her based on his/her "exercise of rights of petition under the constitution of the United States or of the commonwealth."

56. If Mr. Slavenskoj prevails on his motion to dismiss under the Massachusetts anti-SLAPP statute, the court will dismiss the lawsuit against him, and he will be entitled to recover attorneys' fees and court costs. M.G.L. c. 231, § 59H. Furthermore, if he succeeds, he may be able to bring a claim of malicious prosecution against me. By asserting an Anti-Slapp motion, Mr. Slavenskoj has in effect asserted a counterclaim and is seeking a monetary award against me. This is in violation of the automatic stay and entitles me to the protection of the automatic stay for the entire case. Mr. Slavenskoj is the lead defendant in this case and it is critical to determine if he will be in or out of this case first before any aspect of this case can move forward. It is an indispensable part of this case as this motion will decide if this defendant is in the case or out of the case. The matter should be stayed for that reason because if he succeeds on the Anti-Slapp motion, then there is potentially a liability that I am protected from by the automatic stay and we can't determine the rest of this case until we determine if this defendant is in or out of the case. Therefore, the whole thing ought to be stayed. This is solid ground for granting or extending the application of the automatic stay to my case.  At the time when the Anti-Slapp motion was filed on August 31, 2015, I was already a debtor in bankruptcy as of August 27, 2015. Therefore, this motion is in violation of the automatic stay. If I were to lose this motion, then the court automatically awards attorneys' fees and there is a colorable claim for attorneys' fees attached. So it is a counter-claim that exists although it has not been resolved.

57. This is likely one of the key reasons why Judge Robert Gordon, in his wisdom, entered an order applying and recognizing the automatic stay to my case on 9/3/15 because he had just received Danslav Slavenskoj's Special Motion To Dismiss/Anti-Slapp Motion on 8/31/15 and Judge Gordon

knew that Mr. Slavenskoj had in effect asserted a counterclaim against me (NB: Judge Gordon entered an order of a stay and that no further action be taken regarding Mr. Slavenskoj's Anti-SLAPP motion until discharge in bankruptcy or further order of the bankruptcy court). On this basis alone, it turns out that Judge Robert Gordon was right. Judge Robert Gordon was more intimately familiar with the proceedings and filings because he presided over the case the three months when most of the relevant procedural events took place including the suggestion of bankruptcy, the anti-slapp motion, etc. Having only rotated-in after the fact, it is possible that Judge Peter Lauriat may not have been as intimately aware and apparently missed the import and significance of Danslav Slavenskoj's Anti-Slapp Motion, for example.

58. Here is an excerpt from the state court docket that shows the unfolding of events surrounding the Mr. Slavenskoj's Anti-Slapp motion and Judge Gordon's rulings on the matter:

    a. 09/01/2015 -|Defendant Danslav Slavenskoj's special emergency MOTION to Dismiss (MRCP 12b) Complaint of Andre Bisasor pursuant to MGL c. 231 Sec. 59h (w/o opposition) [#43]

    b. 09/02/2015 - Suggestion of bankruptcy by Plaintiff, Andre Bisasor [#46]

    c. 09/04/2015 - Motion (P#43) The plaintiff is directed to reply to defendant Slavenskoj's Special Emergency Motion to Dismiss within 21 days of the date hereof (Robert B. Gordon, Justice) (entered 9/2/15). Notices mailed 9/4/2015

    d. 09/04/2015 - Pleading(P#46) (Suggestion of Bankruptcy) - In accordance with the plaintiff's suggestion of Bankruptcy, an by operation of 11 US c. sec 362, the Action is hereby STAYED as to all parties pending discharge of the bankruptcy estate or other order form the Bankrupcy Court (Robert B. Gordon, Justice) (entered 9/3/15) notice sent 9/4/15

    e. 09/04/2015 - Court received letter from Defendant Slavenskoj to Hon. Robert Gordon regarding his motion to Dismiss: NO ACTION TAKEN. The case has been stayed in consideration of the Plaintiff's suggestion of bankruptcy as of today's date (Gordon, J.) (filed and entered 9/3/15) notice sent 9/4/15 [#47]

    f.  09/11/2015 - Emergency Opposition to Plaintiff's suggestion of bankruptcy filed by Defendant Danslav Slavenskoj [#48]

    g.  09/17/2015 - Emergency Opposition (P#48) - Treating this submission as a Request for Reconsideration of the Court's decision to stay the Plaintiff's action pending further direction from the Bankruptcy Court, the request is DENIED. (Robert B. Gordon, Justice). Dated 9/15/15 Notices mailed 9/16/2015

59. [NB: See Exhibits for Full State Court Docket]

60. It is clear from the state court docket that Judge Gordon took the anti-SLAPP motion into account when he entered the automatic stay on my case. The filing of the anti-SLAPP motion by Mr. Slavenskoj is one of the most compelling arguments for the application of the automatic stay to my case and why this court should enter a stay order.

61. [NB: There have been some procedural irregularities surrounding the circumstances under which Judge Gordon's firm ruling to enter the stay was then reversed by a colleague superior court judge in the same session of the state court. This was not an appeal nor was it a reconsideration by Judge Gordon who issued the firm and clear decision on the application of the automatic stay. Moreover, concerns have been outlined regarding Harvard's attempt to judge-shop the case in the state court by waiting until Judge Peter Lauriat rotated in before attempting to get Judge Lauriat to reverse Judge Gordon, along with concerns about judicial bias have also been raised regarding Judge Lauriat's employment/teaching relationship and interest with Harvard University, as a Harvard Law School faculty/professor for over 6 years or more, among other things. See exhibits for motion to recuse.]

62. If counterclaims have been asserted against me, then the automatic stay would apply. This is a matter to be reviewed for the application of law. It is best resolved by the First Circuit or the bankruptcy court.

63. If anything, this indicates it is a matter of novel impression before the court and careful

consideration is to be given this issue as a matter of first impression.

---

**B. AN ANTI-SLAPP ACTION IS A COUNTERCLAIM OR IS AT LEAST AN "ACTION OR PROCEEDING AGAINST A DEBTOR" WITHIN THE MEANING OF SECTION 362.**

---

64. The anti-SLAPP suit statute was intended to encourage participation in public interest matters and

avoid the chilling of such participation through "abuse of the judicial process." The anti-slapp

motion is a counter-action against the non-moving party, who brought a lawsuit (against the

moving party bringing the special motion) in retaliation for petitioning activity by the moving

party, and is essentially an action alleging an abuse of process or wrongdoing committed by the

non-moving party who brought the lawsuit.

65. Therefore, I am being accused of abuse of judicial process. In filing the antislapp motion, Mr.

Slavenskoj is saying that "I abused the judicial process", instead of simply saying that "I have no

case". These are accusations that I sought to chill the valid exercise of the constitutional rights of

freedom of speech and petition for the redress of grievances and that I sought to deter a citizen

from exercising their right to petition or to punish them for doing so or to intimidate an opponent's

exercise of petitioning rights. These are all elements of a counterclaim of wrongdoing. Thus, an

Anti-SLAPP action is an abuse of process tort claim. It is purportedly "based on Mr. Slavenskoj's

petitioning activity" because he supposedly believes that the activity of my filing a lawsuit against

him is itself an illegitimate abuse of process. His anti-slapp motion is also an injunction against me

and this evidenced by the fact that the motion carries with an automatic stay on all discovery and

prevents me from obtaining any discovery against the defendant that could help me prove my case.

The anti-slapp action involves procedures, legal arguments and pleadings (that I now have to

research myself or pay a lawyer for) that have nothing to do with Mr. Slavenskoj defending against

my actual claims. The things I would have to do to defend against an abuse of process claim, I now have to do to defend against an anti-slapp action.

66. So, I am required to defend myself against these charges, spending time and resources to prove that I did not commit the wrong doing of abuse of process and that my claims are not retaliations intended to stop free speech before a government body.

67. Furthermore, there is a burden-shifting mechanism contained within the anti-slapp statute which essentially puts me in a defensive posture and the concomitant automatic award of attorney fees and costs creates recovery on a claim. If none of this makes the anti-slapp action a claim or counterclaim (however much it might be in disguise) then I don't know what will. (See Halmar Robicon Group, Inc. v. Toshiba Int'l Corp., 127 Fed. Appx. 501, 503 (Fed. Cir. 2005) (automatic stay [operates] as against actions in which debtor is in defensive posture) emphasis supplied.)).

68. It is well-settled that "counterclaims against the debtor are generally barred". Moreover, in Koolik v. Markowitz, the court held that: "[S]ince a defendant who is awarded judgment on a counterclaim is no less a judgment creditor than is a plaintiff who is awarded judgment on a claim asserted in the complaint, we construe the term 'action or proceeding'... to include any pleading that asserts a claim on which relief is sought. In this way, the Second Circuit held that an answer that asserts a counterclaim against a plaintiff that becomes a bankruptcy debtor is an "action or proceeding against the debtor" within the meaning of 11 U.S.C. section 362(a)(1), regardless of whether the plaintiff initiated the lawsuit." Please note that Koolik v Markowitz states that the definition of a counterclaim is any pleading that asserts a claim on which relief is sought and this by definition is an action or proceeding against the debtor.

69. Even if, assuming arguendo, the anti-slapp motion could be parsed out to NOT technically be a counterclaim (on which I disagree), then it is without dispute that the anti-slapp motion is an "action or proceeding against a debtor". This is the key thing because it is the fact that the motion is "an action against the debtor" that actually triggers the automatic stay provisions of the code. So

whether we call it a counterclaim or not, it still causes the automatic stay to apply within the meaning of section 362.

70. Please note that a defendant's motion or pleading by itself made in the context of a plaintiff-debtor's lawsuit, can be "an action against the debtor". It need not be a separate lawsuit or proceeding unto itself.  (See Howell v. Brozzetti, 240 A.D. 2d 794 (3rd Dep't1997) stating that "An answer in an action that asserted a counterclaim against a plaintiff that subsequent to the commencement of the suit became a debtor under the Bankruptcy Code, is an "action or proceeding against the Debtor" and subject to the automatic stay, even though the Debtor commenced the suit."  If the pleading of an Answer with a counterclaim can be an action against a debtor, then therefore, the anti-slapp motion by Defendant Slavenskoj by itself is an action against me as the plaintiff-debtor, within the mean of the section 362).

71. Ironically, this anti-slapp motion is itself a SLAPP suit/action against me intended to deter me from my petitioning activity. Mr. Slavenskoj is not a corporation. He did not petition the government and there is no government body involved. By any means his anti-slapp claim is frivolous and intended to harass me and deter me and increase the cost and burden of litigation for me. It was as strategic decision for him to use the statute's automatic stay on discovery to prevent me from gaining discovery from him as it relates to him and other defendants. Mr. Slavenskoj told me specifically that the users of the website in question have contacted him expressing serious concern about the revealing of their identities. Thus, Mr. Slavenskoj has misused this statute. Nonetheless by seeking to do this, he has accused me of wrongdoing and falsely so. He has twisted the purpose of the statute on its head to do exactly to me what the statute was intended to stop. I, as a person of little means and resources, could in no way be the perpetrator of an SLAPP action (which is intended for very narrow circumstances which do not apply to me or this case).

72. In applying the procedural mechanisms of the statute, Mr. Slavenskoj is allowed to significantly interrupt my ability to pursue all of my claims and to stay discovery on all my claims until or unless the Superior Court denies the motion.

73. Please note that Harvard "coincidentally" benefits from the blocking of discovery from Mr. Slavenskoj and the website but yet Harvard wants to move forward its defense against me with essentially having my hands tied behind my back. This would be manifestly unfair and seems to be calculated for unjust tactical advantage.

74. Furthermore, it would be absurd to allow Mr. Slavenskoj to benefit from an automatic stay prohibiting me from conducting discovery while at the same time deny me the benefit of the automatic stay based on it being a counterclaim against me as the debtor.

75. Please note that many courts across the nation are finding that anti-slapp motions are being used in the exactly the same way that SLAP lawsuits are used…to delay litigation, and discovery, and tie up resources of the Plaintiff with frivolous use of the anti-slapp motion. The anti-slapp motion has become a paradoxical form of vexatious litigation where the anti-SLAPP action is used as an effective-counter-action against a plaintiff's use of judicial processes themselves, by accusing the plaintiff of an affirmative act of wrongdoing, namely intimidating or punishing an opponent. Mr. Slavenskoj's purpose in using this motion is to use it as a counterclaim or a counter-action.

_____

### C. DEFENDANT DANSLAV SLAVENSKOJ'S ATTEMPT TO SEEK A MANDATORY MONEY AWARD AGAINST ME IS A COUNTERCLAIM OR AT LEAST AN ACTION AGAINST A DEBTOR THAT EITHER TRIGGERS OR VIOLATES THE AUTOMATIC STAY

_____

76. Filing a bankruptcy petition causes an automatic stay of all court proceedings and other acts to collect pre-petition liabilities from the debtor. Pursuant to 11 U.S.C. section 362(a), the filing of a bankruptcy petition stays (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the

debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;….and(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. In my case, 1) the acts alleged against me, via Mr. Slavenskoj's anti-slapp motion, occurred prepetition. 2) The motion or action by Defendant Slavenskoj's seeks to recover a claim. 3) The motion or action seeks to employ process of a judicial proceeding against me as the plaintiff-debtor.

77. The automatic stay applies to almost any type of formal or informal action against the debtor or the property of the estate. Therefore, it applies to the special motion action regardless of whether it is a formal separate proceeding or whether it is subsumed within another proceeding.

78. By electing to file an action under this special statute, Mr. Slavenskoj knowingly and purposefully is seeking to collect, assess and recover a claim with a monetary award against me for alleged acts that occurred pre-petition.

79. According to this statute, a money award is awarded automatically to the anti-slapp filer in order to deter the party who brought the legal action from bringing similar future retaliatory lawsuits. The attorney's fees award is designed to reimburse the costs of defending an improper legal action. This is not a contract-based award of prevailing party attorney fees. It is an automatic statutory award of fees in the act itself of filing the motion. The fees are not awarded for conduct I engaged in post-petition. It is awarded for conduct I allegedly engaged in pre-petition i.e. I am being accused of wrongdoing in bringing an improper legal action in retaliation or as a retaliatory lawsuit. Mr. Slavenskoj has asserted that I engaged in retaliation or I sought to muzzle his free speech or that I have sought to engage in some kind of wrongful purpose against him. Given that Slavenskoj is pro se, it is evident that the actual language used on his special motion intends to assert counterclaims. And no matter how frivolous the motion may be, I now have to defend against the merits of Mr. Slavenskoj's charges of retaliation/wrongdoing that have nothing to do with my claim against him.

80. According to the legal dictionary, a claim is defined as: "1) v. to make a demand for money, for property, or for enforcement of a right provided by law. 2) n. the making of a demand (assert a claim) for money due, for property, for damages or for enforcement of a right." A counterclaim is defined as "A claim by a defendant opposing the claim of the plaintiff and seeking some relief from the plaintiff for the defendant." (See http://legal-dictionary.thefreedictionary.com/claim).  Mr. Slavenskoj in his special anti-slapp action has made a legal assertion and demand for money (which makes it a legal claim) and he has used it in the context of opposing my claim against him and he is seeking relief against me as the plaintiff.  This clearly meets the criteria for being a claim/counterclaim.

81. Any action taken to collect money or money damages that is pending in a non-bankruptcy court, becomes a claim for bankruptcy purposes. See In re Meyertech Corp., 831 F.2d 410, 417-18 (3d Cir. 1987) (A suit for damages pending against a debtor in a non-bankruptcy court when the debtor files his petition, becomes a "claim" for bankruptcy purposes….without any final determination of the action by the non-bankruptcy court.).

82. The automatic stay serves several purposes. It gives a bankrupt a breathing spell from creditors by stopping all collection efforts, all harassment, and all foreclosure actions. Mr. Slavenkoj's motion is a collection effort and a harassing action intended to force me to defend against such claims.

83. If fees and costs are collected from me by Mr. Slavenskoj, it would undermine the purpose of the protections afforded by the bankruptcy code. For example, what if his fees are $30,000, $40,000 or $50,000? That will completely devastate me as a plaintiff-debtor.

84. Moreover, it is well-settled that the seeking of an award of costs against a debtor in bankruptcy, without permission of the bankruptcy court, is in fact a violation of the automatic stay.  This is further confirmed by Judge Jones of the 9th circuit when he stated that: "Even though Gordon may have believed in good faith that seeking an award of costs was not a violation of the stay, a broad application of In re Goodman dictates that it is."  Note also that in In re Merrick (BAP 9th Circuit

(1994)), Judge Jones found that: "[At] the moment the bankruptcy petition was filed, any further action on a pending motion for pre-petition costs constituted a violation of the stay. The subsequent hearing on the motion and award of fees was a violation of the stay. See 11 U.S.C. § 362(a)(1).]." These examples clearly contradict Harvard's argument that "another district court noted the lack of any precedent that even implies that the imposition of attorney fees and costs should be a factor in calculating whether debtor's suits should be stayed during a bankruptcy." This is a recurring problem with Harvard's arguments i.e. they at times either misquote the cases they cite or they cherry-pick quotes from a case that support their point but ignore statements made in that same case that support my point or contradicts their argument. This illustrates another example why this court should take with a grain of salt any quotes or citations made by Harvard defendants and to scrutinize these references to ensure consistency with their claims.

85. The mandatory nature of the award of the fees and costs adds further ammunition in conclusively treating the anti-slapp motion as a violation of the automatic stay because the mandatory nature of the award makes a difference in assessing whether the act is an attempt to collect, assess or recover on a claim. See Goodman: In re Chateaugay Corp., 920 F.2d at 187. (The primary difference between proceeding on the basis of the language of § 362(h) on one hand, and civil contempt on the other, is the mandatory nature of an award of damages as to the former compared to the permissive nature of such an award under the latter. Pursuant to § 362(h), an individual injured "shall" recover damages; pursuant to civil contempt, whether damages shall be awarded is discretionary. This distinction makes a difference in this case because the bankruptcy court in deciding not to award damages observed that in its view, the violation was "not [sufficiently] egregious" to justify damages).  (Emphasis added)

86. The BAP of the 9th Circuit found that the award of fees was in violation of the automatic stay.  See In re Merrick (BAP 9th Circuit (1994)) ("We note that the state court…also granted him an interest

in the total costs awarded to all of the defendants, and that these costs were awarded postpetition. Assuming these costs were awarded in violation of the automatic stay...).

87. Moreover, an anti-slapp action against a debtor creates the likelihood that the debtor's estate will be divested of some (if not all) of its assets, if in fact the anti-slapp motion is successful with its automatic award of a money judgement of attorney fees and costs. This is a potential disruption of the administration of the estate and it is precisely the kind of thing that section 362 was designed to prevent. See Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., (3d Cir.1982) (The potential disruption of the administration of the bankruptcy estate that would be caused by the Association's success in its cross-appeal is precisely the result section 362 was designed to prevent. Since it would be unwise in the circumstances of this case, to stay only one of the two appeals before us, we thus stay both.)

88. Mr. Slavenskoj is attempting to put me in a defensive posture to answer charges of wrongdoing and abuse of process and to collect payment of an automatic money judgment attorney fees and costs. Please note that an automatic award of money under the Massachusetts anti-slapp statute is a different thing than a sanction under Rule 11 (i.e. a Rule 11 sanction is discretionary and need not be a money award).

89. The automatic stay is triggered whenever there is an attempt by a party "to exercise control over property of the estate," § 362(a)(3). It is most likely that a contention by a defendant that the debtor owes the defendant fees and costs can be equated with exercising dominion or control over property of the estate.

90. Subsection 362(a)(6) uses very broad language and courts generally construe the automatic stay provisions broadly. It applies to formal or informal proceedings against a debtor and it stays "any act to collect, assess, or recover a claim against the debtor that arose before [the filing of the petition]." The attempt to seek money award of fees and costs through an anti-slapp action is an attempt to collect, assess or recover against the debtor. (See Morgan Guar. Trust Co. v. American

Sav. And Loan (9th Circuit) (1986). See also, e.g., Coben v. Lebrun (In re Golden Plan of California, Inc.), 37 B.R. 167, 170 (Bankr.E.D.Cal.1984); Wallingford's Fruit House v. Inhabitants of the City of Auburn (In re Wallingford's Fruit House), 30 B.R. 654, 659 (Bankr.D.Me.1983).)

91. These provisions stay acts that immediately or potentially threaten the debtor's possession of its property: commencement of judicial proceedings; enforcement of judgments; creation and enforcement of liens; and setoffs of debts owing to the debtor against claims against the debtor. 11 U.S.C. §§ 362(a)(1), (2), (4), (5), (7) & (8). The activities that are specifically prohibited all involve attempts to confiscate the debtor's property or require the debtor to act affirmatively to protect its interests. It is clear that Mr. Slavenskoj's antislapp motion is an act that requires me to act affirmatively to protect my interests. The anti-slapp action with its attempt to collect an automatic money award interferes with the orderly administration of the estate, the debtor's "breathing spell," and the status quo.

92. The automatic stay prohibits any action that would inevitably have an adverse effect on property of the estate. (See In re Prudential Lines, Inc., 119 B.R. 430 (S.D.N.Y.), aff'd, 928 F.2d 565 (2d Cir.), cert. denied, PSS S.S. Co., Inc. v. Unsecured Creditors, 502 U.S. 821 (1991)). It is without dispute that this anti-slapp action would have an adverse effect on the debtor's estate.

93. If the anti-slapp motion constitutes a counterclaim subject to the automatic stay, the appropriate resolution is to stay the entire proceedings.

_____

**D. HARVARD HAS EFFECTIVELY ASSERTED COUNTERCLAIMS OR INTENDS TO ASSERT COUNTERCLAIMS IN AN ANSWER AFTER THE RULE 12B PHASE.**

_____

94. Harvard has asked for Rule 11 sanctions in its motion to dismiss filed in state court. This also raises the issue of Harvard asserting a counterclaim based on the filing of my lawsuit because Harvard was seeking a discretionary money award from the state court. This shows that Harvard itself was seeking to assert a claim against me as well. Also, Harvard cannot say there are no

counterclaims because the time for formal pleading of counterclaims has not come as yet. This is a unique situation because in many instances like this, the answer has already been filed in the case where there is no question as to whether a counterclaim has or could be filed. I have made an email request to Harvard's counsel asking them to tell me if any of the defendants intend to formally assert other counterclaims in an Answer beyond the Rule 12B phase. To this date, no answer has been forthcoming, which confirms that Harvard knows that they have or intend to file formal counterclaims. This reveals how disingenuous Harvard's counsel is on this point because they are trying to play both sides, have "their cake and eat it too" and are playing a sleight of hand deception on the court. See Exhibit 5: Email To Harvard's Counsel Regarding Counterclaims.

95. Following Harvard's cue, Defendant Vedaa has also threatened Rule 11 sanctions in similar fashion based on the form and style of my pleadings.

96. Given the number of claims, counterclaims, award of sanctions, award of money, being sought by multiple defendants, all of which have put me in a defensive posture, the proper result here is to stay all proceedings at this juncture. Otherwise, any other result would produce near anarchy when the only discernible organizing principle (for those defendants seeking a money award from me via sanctions, counterclaims or special motions, etc.) would be first-come-first-served. See Matter of S.I. Acquisition, Inc., 817 F.2d 1142 (5th Cir.1987).

---

**E. ANY ADVERSE RULINGS AGAINST THE DEFENDANTS CAN BE ATTACKED BY DEFENDANTS BASED ON THE FACT THAT I AM NOT TECHNICALLY THE REAL PARTY OF INTEREST I.E. CIVIL DOUBLE JEOPARDY**

---

97. Bostanian v. Liberty Savings Bank (Court of Appeal, Second District, Division 5, California,1997) states: "Under federal decisional authority, a Chapter 7 debtor may not prosecute on his or her own a cause of action belonging to the bankruptcy estate unless the claim has been abandoned by the trustee.   (Griffin v. Allstate Ins. Co. (C.D.Cal.1996) 920 F.Supp. 127, 130; In re Price

(Bankr.N.D.Ga.1994) 173 B.R. 434, 440;  In re Davis (Bankr.N.D.Ind.1993) 158 B.R. 1000, 1002;

Harris v. St. Louis University (E.D.Mo.1990) 114 B.R. 647, 648-649;  see Vreugdenhil v.

Hoekstra (8th Cir.1985) 773 F.2d 213, 215.).

98. Federal Rule of Civil Procedure 17 (28 U.S.C.), made applicable to bankruptcy proceedings by

Federal Rule of Bankruptcy Procedure 7017 (11 U.S.C.), requires that "[e]very action shall be

prosecuted in the name of the real party in interest."  The trustee controls the bankruptcy estate,

therefore, she or he is the real party in interest with standing to sue. (Griffin v. Allstate Ins. Co.,

supra, 920 F.Supp. at p. 130; In re Davis, supra, 158 B.R. at p. 1002.)...absent abandonment of the

claim by the trustee, a debtor out of possession has no standing to prosecute a cause of action

which has passed to the bankruptcy estate….we respectfully disagree with those cases which

suggest (because the opinion fails to reveal the chapter under which the bankruptcy petition was

filed) or hold that a Chapter 7 debtor has standing to continue to prosecute a pending cause of

action which has become property of the estate...[T]he debtor may not pursue the cause of action

on his or her own unless the cause of action has been abandoned by the trustee…it is the trustee

who must prosecute the action, not the debtor."

99. Hence, based on the above, it is clear that I cannot prosecute a case for which I am not really the

real party in interest. The statute requires that every action be prosecuted in the name of the real

party in interest. Allowing the real party in interest adequate time and opportunity to join the case

does not prevent Harvard or anyone from defending themselves.

100.    Additionally, Harvard is seeking to play a game of civil "double jeopardy". They would like for

me to continue to proceed with my case and if there are any adverse rulings, it can then reserve the

right to challenge the ruling on the grounds that I was not the real party in interest. The purpose of

FCRP Rule 17 (and MCRP Rule 17) is to protect parties from this double jeopardy scenario and to

prevent defendants from playing both sides of the fence, so to speak.

101.    This is why it is imperative that the real party in interest be given ample opportunity to join the

case and why I should not be forced to make substantive legal arguments related to the prosecution

of this case because the defendants can take a second bite at the apple. They have shown a

penchant for doing so, when they successfully took a second "bite at the apple" in state court

regarding Judge Gordon's ruling twice regarding the automatic stay.

102.    NB: In the Fed. R. Civ. P. 17 advisory committee's note (1966)…it states that the modern

function of the Rule is to "protect the defendant against a subsequent action by the party actually

entitled to recover, and to insure generally that the judgment will have its proper effect as res

judicata." Id. Essentially, the rule is meant to prevent "double dipping" by both the real party in

interest and the underlying plaintiff on whose behalf the real party in interest may act.

---

## F. THE AUTOMATIC STAY CAN & DOES APPLY TO THE PLAINTIFF'S PREPETITION CLAIMS (AS WAS RECOGNIZED BY SUPERIOR COURT JUDGE ROBERT GORDON)

---

103.    It is not always true that the automatic stay provision in 11 U.S.C. § 362(a) does not apply to

prepetition claims brought by the debtor. It can apply to claims brought by the debtor under certain

circumstance including if counterclaims are brought, if there are unusual circumstances, if there are

immediate adverse economic consequences and if the prosecution of the claim by the debtor would

require that he go into debt to do so, and if it involves arbitration.

104.    A close examination of In re Critical Fork Coal Corp. (Virgina,1982) reveals that: "Further, the

debtor is prohibited from incurring debt, other than in the ordinary course of business, without

approval of the court after notice and a hearing. See 11 U.S.C. § 364(b). The debtor's continuance

of litigation, or any judicial proceeding, incurs a debt that is generally not within the ordinary

course of the debtor's business. The debtor may not, therefore, pursue that proceeding in any

fashion without approval of this Court. In short, it appears that the filing of a petition for relief in

this Court effectively stops any further action in proceedings involving the debtor pending in other courts, regardless of whether the debtor is plaintiff or defendant."

105.    Based on In re Critical Fork Coal Corp., it is clear that the automatic stay applies to cases initiated by a plaintiff-debtor, where the plaintiff-debtor has to incur a debt to pay for legal fees, costs associated with transactions with the court or with the defendants such as serving and filing of papers, and costs associated with the expenses of conducting discovery or a trial. Because I would have to incur debt in order to prosecute my case, then the stay should apply. This is the clear reading of section 364 of the code as articulated by the 9th Circuit.

106.    Otherwise, because of lack of resources, a debtor could simply not respond and let a case default (whether due to lacks of funds or legal error) and then the trustee would lose the ability to prosecute the case. Similarly, in my case, I am trying to preserve the case for the trustee and I am trying to preserve the status quo so that the trustee, who has the resources and the knowledge to prosecute this case can have time to ratify/join (or otherwise abandon) the case.

107.    Harvard wants to block this from happening clearly because it would rather fight me in court, a lone under-resourced black male pro se defendant, versus a well-funded and legally skilled federal trustee. This is obvious. Harvard would absolutely not be prejudiced if a stay is entered until my bankruptcy discharge or until the trustee has had a proper chance to ratify/join the case. See Delpit v. CIR, 18 F.3d 768 (9th Cir. 1994) ("However, the trustee's right to appeal a Tax Court judgment can be fully preserved only if all existing appeals are stayed. Otherwise, the debtor might default on its appeal for any number of reasons (e.g., lack of funds, legal error), and thus deprive the trustee of its ability to prosecute an appeal on the debtor's behalf.")

108.    Another example that supports my argument is related to arbitration proceedings initiated by the debtor. The scope of the automatic stay is broad and covers all proceedings against a debtor, including arbitration. In Acands Inc. v. Travelers Cas. & Sur. Co. (2006), the 3rd circuit found that "the automatic stay applied to the arbitration" even though it was initiated by the debtor, that "the

arbitration award is invalid because it diminishes the property of the estate" and that "the panel's award violates the automatic stay and is therefore void ab initio. See Maritime Elec. Co., 959 F.2d at 1206." It is important to note that **initially the District Court in this case held that the automatic stay did not apply because the arbitration was an action initiated by the debtor**. But the 3rd circuit court reversed stating that although "defenses, as opposed to counter-claims, do not violate the automatic stay because the stay does not seek to prevent defendants sued by a debtor from defending their legal rights and the defendant in the bankrupt's suit is not, by opposing that suit, seeking to take possession of it. . . .", that therefore "to avoid interfering with the broad purposes served by the automatic stay, it was necessary for the arbitration proceeding to halt as soon as the scope of the parties' submissions supported an award that could diminish [the] estate. By continuing beyond this point, the proceeding violated § 362(a)(1), and the panel's deliberations and the resulting award are therefore void." **This shows that the correct way to analyze whether the anti-slapp motion is a counterclaim or an action against the debtor subject to the automatic stay is not to focus on whether the plaintiff debtor initiated the lawsuit but whether at a certain point in the proceeding, a certain action is taken that extracts or seeks to extract a monetary award from the debtor**.

109.    This is also backed-up by examples of tax court proceedings. In Delpit v. CIR (9th Cir. 1994), the court found that: "The mere fact that a debtor "initiates" an action in Tax Court is not dispositive; we must examine the proceedings as a whole to determine whether they are in fact initiated "against the debtor." See In re Bloom, 875 F.2d 224, 226 (9th Cir.1989) (holding that a motion by a creditor to strike a pre-bankruptcy action violates the automatic stay even though the debtor initiated the proceeding and was the plaintiff)."

110.    [NB: So although the 362 statute does not explicitly address actions brought by the debtor, it also does not rule out extension of the stay to actions brought by the debtor when circumstances

warrant it.  Because it is silent on the issue, it does not mean that there are not circumstances under which it would apply as shown in the above examples.]

111.    See Matter of S.I. Acquisition, Inc., 817 F.2d 1142 (5th Cir.1987) stating that: "We also are of the opinion that our decision that Eastway's state court action is stayed by section 362(a)(3) carries out the general policies of the Bankruptcy Code….Its action is based upon allegations that if proven would benefit all of S.I.A.'s creditors, i.e., making more assets available to satisfy S.I.A. debts….Thus, not to stay Eastway's action would promote the first-come-first-served unequal distribution dilemma that the Bankruptcy Code and In re MortgageAmerica sought to prevent."

---

## G. THERE ARE SEVERAL PURPOSES OF THE AUTOMATIC STAY THAT ALLOWS FOR CONSIDERATION OF THE FINANCIAL CIRCUMSTANCES OF THED DEBTOR

---

112.    There are several purposes to the automatic stay provisions of the bankruptcy code.

113.    The automatic stay is intended to provide a breathing spell from the financial pressures that drive the debtor into bankruptcy. It also provides a breathing spell to allow the real party in interest to join the case. See In re Merrick (BAP 9th Circuit (1994)), ("The trustee contended that § 362 affords time for evaluation of the estate's assets and determination of the proper course of action relative thereto. If such time is needed, the trustee may seek a discretionary stay from the bankruptcy court pursuant to § 105."). One of the things that I have been attempting to do is to seek a stay because "such time is needed" (as shown above) for the trustee to evaluate the lawsuit and determine whether to join or abandon the case. Since the trustee has not yet acted on this case, I am allowed to seek a stay to preserve the status quo to allow him a reasonable time to do so. This is the clear meaning of the above cited case and it removes any doubt as to whether seeking a stay under these circumstances is somehow impermissible or unwarranted or procedurally incorrect.

114.    I am not seeking to prevent defendants from opposing my lawsuit or to prevent them from protecting their legal rights. I am seeking a stay until my bankruptcy is completed, until the trustee

ratifies/joins or abandons the case or at least for discrete period of time wherein I can clear

scheduling conflicts that include overseas work commitments. This does not prevent the exercise of

any rights of the defendants. If anything, it only defers them until a discrete period of time in the

future.

115.    Additionally, please note that there are several objectives intended by the bankruptcy code and

the automatic stay provision. By simply quoting one or two of those objectives, that ignores the

fact that there are other objectives of the code intended as well such as: not dissipating the assets of

the debtor or his estate, relieving the debtor of crushing financial pressures giving him a chance to

reorganize or get on his feet, and giving the trustee time to investigate the matters related to the

debtor assets including whether to ratify/join or abandon a pre-petition lawsuit, and protecting the

debtor from having to engage in multi-forum litigation, etc.

116.    According to Maritime vs United Jersey Bank (3rd Circuit): "The automatic stay serves several

purposes. First, it gives a bankrupt a breathing spell from creditors by stopping all collection

efforts, all harassment, and all foreclosure actions. Id. The stay permits a bankrupt to attempt a

repayment or reorganization plan or simply to be relieved of the financial pressures that drove him

into bankruptcy. Second, the stay protects creditors by preventing particular creditors from acting

unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors. Id.

In other words, the stay "protect[s] the bankrupt's estate from being eaten away by creditors'

lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets

and distribute them equitably among the creditors."

117.    Moreover, in Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., (3d

Cir.1982), it states: "In explaining the purpose of the automatic stay, the House Report

accompanying the Bankruptcy Reform Act of 1978 states: The automatic stay is one of the

fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing

spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It

permits the debtor to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy."

118.    Moreover, when Congress authorized the new Bankruptcy code in 2005, "Under the new Code, relief from a stay must be authorized by the Bankruptcy Court to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor."

119.    Similarly, Delpit v. CIR, 18 F.3d 768 (9th Cir. 1994) states: "The automatic stay allows debtors, during the period of the stay, "to be relieved of the financial pressures that drove [them] into bankruptcy." Id. at 6297. Accordingly, Section 362 is "extremely broad in scope" and "should apply to almost any type of formal or informal action against the debtor or the property of the estate." 2 Collier on Bankruptcy ¶ 362.04, at 362-34 (15th ed. 1993) (emphasis added)."

120.    In addition to protecting relative positions of creditors, the automatic stay is designed to shield Chapter 7 debtor from financial pressure during pendency of bankruptcy proceeding. (See In re Stringer (1988, CA9 Cal) 847 F2d 549, 17 BCD 1169, 19 CBC2d 233, CCH Bankr L Rptr P 72297.)

121.    Therefore, it is clear that "to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy" or "in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor" is one of the main objectives of the automatic provisions of the bankruptcy code and that clearly stated purpose is something that Harvard keeps ignoring. Harvard only wants to focus on the other purposes but ignore this one, when it is clear that Congress intended multiple purposes of the automatic stay. "To be relived of the financial pressures that drives a debtor into bankruptcy" has nothing to do directly with creditors or an analysis of the rights of the creditors. It also has nothing to do directly with the trustee's management of the estate. It has to with the debtor's financial situation. This

means that Congress intended the automatic stay to protect or shield the debtor specifically from

further financial ruin or distress i.e. pressure points that drove him into bankruptcy in the first

place. It would be inimical to the intent of congress for a debtor to file bankruptcy, only to be made

worse off than if he never filed bankruptcy at all. Bankruptcy was not intended to punish debtors or

to be punitive for debtors. It was meant to be rehabilitative; it was meant to provide the debtor an

opportunity to regain his financial footing or to reorganize his financial affairs so that he can

improve his financial situation. Congress never intended for the bankruptcy process to drive a

debtor further into financial ruin or despair. Hence, the automatic stay provision that deals directly

with the explicit intent of congress to "relieve the debtor of the financial pressures that drive him

into bankruptcy".  This is also not only consistent with the clear meaning of the above words, it is

also consistent with the spirit/context of what was intended by the code and it is also consistent

with logic, equity and the interests of justice.

---

## H. THE COURT IMMEDIATELY SHOULD ISSUE AN ADMINISTRATIVE STAY

122.    The plaintiff-appellant requests that the first circuit court immediately issue an administrative

stay that stays the proceedings in state court while the first circuit court reviews whether the

automatic stay should be applied or extended to my case. Granting an administrative stay would

minimize unnecessary disruption and confusion. If no administrative stay were issued, for instance,

the state court might dismiss the case while this motion to stay is pending before this Court. If this

Court were to not grant the appellant's motion and issue a stay, the plaintiff-appellant could suffer

irreparable harm in that the harmless error doctrine could be used to deny him on appeal.

## VII. THE STANDARD FOR APPELATE REVIEW

123.    The standard for reversal of a judge's decision is based on the "abuse of discretion" standard.

The Second Circuit Court of Appeals has explained that a district court abuses its discretion when

"(1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." Thus if a judge made a legal error, that's an abuse of discretion according to the Second Circuit. If a judge misapprehended the facts, that is likewise an abuse of discretion. If a judge's order was just plain wrong, then that is grounds for reversal too.

124. [NB: Even though it seems clear that a remand order is not appealable, the appeal courts have reviewed separable and collateral orders that precede the remand order. See, e.g., First Nat'l Bank v. Genien Marine Servs., Inc., 136 F.3d 391 (5th Cir. 1998). In Angelides, the Fifth Circuit considered the separableness from the remand order in conjunction with the collateral order exception, hinging the applicability of one on the other].

## VIII. STANDARD FOR A STAY PENDING APPEAL

125. The purpose of a stay is to preserve the status quo pending appellate determination. (See McClendon v. City of Albuquerque, 79 F.3d 1014, 1020 (10th Cir. 1996)). When considering a stay pending appeal, a court must consider the following factors: (1) the likelihood of success on appeal; (2) the threat of irreparable harm absent a stay; (3) the absence of harm to opposing parties if the stay is granted; and (4) any risk of harm to the public interest. (See Baker v. Adams County/Ohio Valley School Bd., 310 F.3d 927, 928 (6th Cir. 2002)). A stay pending appeal does not "require the trial court to change its mind or conclude that its determination on the merits was erroneous" before holding that a stay pending appeal is warranted. (See St. Agnes Hospital v. Riddick, 751 F.Supp. 75, 76 (D.Md. 1990)).

126. This test is flexible and allows a movant to obtain a stay pending appeal by showing "a substantial case on the merits when a serious legal question is involved" and that "the balance of the equities weighs heavily in favor of granting the stay." Ruiz v. Estelle, 650 F.2d 555, 556 (5th Cir. 1981); see also Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002) 2 ("The probability of

success that must be demonstrated is inversely proportional to the amount of irreparable injury

plaintiff will suffer absent the stay.").

127.     In deciding whether to grant a stay pending appeal, the Court should consider whether (1) the

appellant is likely to succeed on the merits; (2) irreparable harm to the appellant will result if the

stay is not granted; (3) others will be harmed without a stay; and (4) the public interest favors

granting the stay. United States ex rel. Barko v. Halliburton Co., 4 F.Supp.3d 162, 168–69 (D.D.C.

2014) (citing Cuomo v. U. S. Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985)).

"[A] strong showing of one factor may excuse a relatively weaker showing on another." Baker v.

Socialist People's Libyan Arab Jamahirya, 810 F.Supp.2d 90, 97 (D.D.C. 2011) (citing Davis v.

Pension Benefit Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009)).

128.     The grant of a stay is a matter of "judicial discretion" that is "dependent upon the

circumstances of the particular case." Barko, 4 F.Supp.3d at 169 (quoting Nken v. Holder, 556 U.S.

418, 419 (2009) (citations omitted)). A court "'in the exercise of judgment' must "'weigh

competing interest and maintain an even balance' between the court's interests in judicial economy

and any possible hardship to the parties[.]" Belize Social Dev. Ltd. v. Government of Belize, 668

F.3d 724, 732–33 (D.C. Cir. 2012) (quoting Landis v. North American Co., 299 U.S. 248, 254–55

(1936)).

129.     Courts, however, have routinely held that a stay pending appeal is warranted in cases

presenting difficult and unsettled legal questions. See Akiachak Native Community v. Jewell, 995

F.Supp.2d 7, 13 (D.D.C. 2014) (granting in part stay pending appeal) ("Though the Court disagrees

with Alaska's position, and finds there to be a low likelihood of success on the merits, it recognizes

that the case presented difficult and substantial legal questions . . . ."); Ctr. for Int'l Envtl. Law v.

Office of the U.S. Trade Rep., 240 F.Supp.2d 21, 22–23 (D.D.C. 2003) (granting stay pending

appeal, where, despite risks of harm to plaintiffs, case clearly presented "a serious -5- legal

question" on issue of first impression); see also Klayman v. Obama, 957 F.Supp.2d 1, 43 (D.D.C.

2013) (staying preliminary injunction pending appeal due to, inter alia, "the novelty of the constitutional issues[.]").

## A. LIKELIHOOD OF SUCCESS ON APPEAL

130.    The Court should grant a stay to preserve the status quo to enable the appellant to obtain clarification from a higher court on a crucial issue implicating federal law. See Nken, 556 U.S. at 421 ("[A]s part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.") (quoting Scripps–Howard Radio, Inc. v. FCC, 316 U.S. 4, 9–10 (1942)). See also Citizens for Responsibility & Ethics in Wash. v. Office of Admin., Executive Office of the President, 593 F.Supp.2d 156, 159 (D.D.C. 2009) ("a stay pending appeal 'is preventative, or protective; it seeks to maintain the status quo pending a final determination of the merits of the suit.'") (quoting Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977)).

131.    With respect to the "likelihood of success" "[i]t will ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." Baker, 810 F.Supp.2d at 97 (quoting Holiday Tours, 559 F.2d at 844); see Al-Anazi v. Bush, 370 F.Supp.2d 188, 193 n.5 (D.D.C. 2005) ("courts often recast the likelihood of success factor as requiring only that the movant demonstrate a serious legal question on appeal where the balance of harms strongly favors a stay") (citing, inter alia, Cuomo, 772 F.2d at 978)); Holiday Tours, 559 F.2d at 844–45 (noting that courts may issue a stay "when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained").

132.    In light of the novelty of the issues on appeal, the seriousness of the issues, and the preliminary stage of the litigation, the appellant is likely to succeed in demonstrating the need for a stay pending appeal while it pursues its appellate rights. See Akiachak Native Community, 995

F.Supp.2d at 13; Al Maqaleh v. Gates, 620 F.Supp.2d 51, 56 (D.D.C. 2009) (granting stay pending

appeal where preservation of the status quo "squarely favors respondents" where "[t]he issues

presented are novel and weighty—fundamental constitutional questions" that "present 'serious

legal questions….that are so serious, substantial, and difficult as to make them a fair ground for

litigation.'") See also Klayman v. Obama, 957 F.Supp.2d 1, 43 (D.D.C. 2013) (staying preliminary

injunction pending appeal due to, inter alia, "the novelty of the constitutional issues[.]")

133.    Movants seeking a stay pending appeal "need not always establish a high probability of success

on the merits" but instead must show, at a minimum, the existence of "serious questions going to

the merits." (See Grutter v. Bollinger, 247 F.3d 631, 632-33 (6th Cir. 2001) (citing Michigan

Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153-54 (6th Cir.

1991)). The issuance of stays pending appeal in the similar cases cited above supports the

conclusion that there is at least a serious question going to the merits of my claims.

134.    Where the appeal is from an interlocutory order, courts have held that the issue to be reviewed

for likelihood of success on the merits is whether the appellate court will allow the interlocutory

appeal, not whether the appellant will succeed on the merits of the appeal. See Turner v. Frascella

Enters., Inc. (In re Frascella Enters., Inc.), 388 B.R. 619, 622 (Bankr. E.D. Pa. 2008); In re Genesis

Health, 367 B.R. at 623.

135.    Given that the issue of the denial of the applicability of the automatic stay implicates the

denying or refusing of an injunction, then it is likely that the appeal will be allowed and given the

fact the counterclaims have essentially been asserted against me in the underlying civil case, it is

likely that the first circuit will find that the automatic stay applies to my case.

## B. THREAT OF IRREPRABLE HARM TO APPELLANT ABSENT A STAY

136.    If this court rules on the motion to remand without first allowing the first circuit court to rule on this matter, it will deprive me of the right to appeal. This is likely to be an irreparable harm to me because I will be deprived of having my case heard in the federal court.

137.    Moreover, the federal court is the proper venue for my case given my bankruptcy and the complicating factors related thereto and its impact on my estate. Also, the issue of the automatic stay should properly be decided before the federal court or bankruptcy court especially since the state court gave two conflicting decisions on whether the automatic stay is applicable to my case given the extenuating circumstances of my case and situation.

138.    Furthermore, one of the purposes of the bankruptcy code is the allow the debtor the ability to avoid multi-forum litigation that can stretch and tie up resources that may be needed to be directed towards getting through the bankruptcy in federal court. I have special extenuating circumstances that militate in favor of the automatic stay applying to my case and this was articulated by the Honorable Judge Robert Gordon in the Massachusetts Suffolk Superior Court when he entered an order for a stay pending discharge from the bankruptcy court or pending further instructions from the bankruptcy court. The fact that a seasoned state superior court judge saw fit to the apply the stay to my case shows that my arguments here have merit because it is backed up by at least one notable state court judge. Even though Judge Gordon's decision was reversed by his colleague, Judge Peter Lauriat (who cycled in to the session at later time due to the state courts rotation schedule of judges and after Harvard tried to judge shop to reverse Judge Gordon's decision), the fact the two state court judges in the same superior court session issued conflicting decisions on this matter, is evidence that the matter is ripe for review by the federal or bankruptcy court which has original but non-exclusive jurisdiction over my case under section 1452.

139.    Harvard has argued that an automatic stay is not applicable to my case but much of their argument cites cases related to corporate debtors not individual or pro se debtors who many times

face unique or special circumstances that warrant application of the automatic stay. For instance, there will be a duplicative and uneconomic effect on my resources if I have to litigate my bankruptcy case and the instant case in both state and federal court (i.e. two disparate forums). Something as simple as having access to ECF filing in federal court has a tremendous impact on a pro se litigant's time and resources (i.e. travel or mailing costs to file documents with the court), which is not available in state court. Moreover, there is a lessened possibility of inconsistent results if both cases are in federal court. NB: there has already been inconsistent results between two state court judges in superior court regarding the automatic stay or the need for an imposed stay i.e. showing the heightened chance that a state court may create inconsistent results as it relates to issues that may involve or relate to my bankruptcy case.

140.    Furthermore, there is an "immediate adverse economic consequences" standard for exception. Under this standard, a court will expand the automatic stay when absent a stay, there will be an "immediate adverse economic consequence [on] the debtor's estate." (See In Queenie, Ltd. v. Nygard International).

141.    There is also another prominent standard, the unusual circumstances standard for exception, which was annunciated in A.H. Robins Company, Inc. v. Piccinin. In that case, the Fourth Circuit held that in order for the automatic stay to apply to a non-debtor, there must be "unusual circumstances." Based on the "unusual circumstances" arising from individuals' relationships with the debtor, the Fourth Circuit affirmed the lower court's expansion of the stay because "continuation of litigation in [those] civil actions threatened property of [the debtor's] estate, burdened and impeded [its] reorganization effort, contravened the public interest, and rendered any plan of reorganization futile."

142.    Therefore, some courts have expanded the automatic stay provision to apply beyond the normal limitations. When determining whether to expand the automatic stay, these courts consider if unusual circumstances exist or if there will be immediate adverse economic consequences due to

the bankruptcy proceeding. I have tried to articulate the unusual circumstance of my not being the
real party in interest and the immediate adverse economic consequences of diminishing my already
meager resources in having to litigate a complex multi-party case while trying to get through a
bankruptcy. It is more orderly and efficient for an individual pro se litigant to get through and
complete a bankruptcy first and then resume the instance case litigation.

143.    I have not yet had an opportunity to lay out my arguments in more detail for why the automatic
stay applies to my case but I hope to do so in my appeal briefing.

144.    If the state court rules on the motion to dismiss before allowing the appeals court to weigh in on
whether the automatic stay is applicable to my case, it would cause irreparable harm to me as the
plaintiff. Firstly, it will cause me a lot of expense, time and effort to move to appeal the dismissal.
This is time and money I don't have as a financially constrained pro se plaintiff who is still
completely the bankruptcy process. To people who have resources, it might be difficult to
understand how much of a burden it is on pro se litigants who have to work and take care of
family, especially those who are under-resourced minorities. This time and money I can never get
back. Over the past several months, my having to try to keep my case alive and preserve it while
completely my bankruptcy while working, while taking of my family while trying to climb out of
the setback that led me into bankruptcy, has caused much interruption and adverse effects in my
life, in my ability to complete my bankruptcy case, in the draining of the little resources I have (i.e.
the administrative burden of having to prepare, copy, serve and file paperwork for multiple
defendants carries a significant monthly financial burden for a lone pro se plaintiff as I am not a
law office).

145.    In the interest of fundamental fairness and justice, it seems that the correct outcome would be
for this court to stay the hand of the state court regarding making a decision on the motion to
dismiss given the harm that would result. Given that the state court is aware that I have exercised
my right to appeal to the first circuit then it would be unfair for the state court to ignore my appeal

to the first circuit by proceeding to rule on the motion to dismiss now (particularly if it will be an adverse ruling) without allowing the appeals court to determine if the federal district court made an error in denying the motion to stay and in remanding the case back to state court.

146.    I respectfully submit that I should be allowed to obtain appellate review before any decision on the motion to dismiss is rendered. The harm I would incur is irreparable because it may not be able to be undone on appeal.

147.    The irreparable harm to the appellant could be "presumed" because the stay would protect "intangible and unquantifiable interests" which "cannot be compensated by damages." Order at 18 (quoting Ezell v. City of Chicago, 651F.3d 684, 699 (7th Cir. 2011)).

148.    Prospect of Irreparable Harm to Moving Party if Stay is Denied: Irreparable harm here is actual and imminent as 5 motions to dismiss hearings will take in two days on Nov 10, 2016. Imminent harm is an important factor in the decision to grant a stay pending appeal. In re Adelphia Commc'ns Corp., 361 B.R. 337, 347 (S.D.N.Y. 2007). Moreover, if my case is dismissed, there are statute of limitations problems that will prevent me from refiling the case. I will have forever lost the right to bring my case if it is dismissed at this juncture.

149.    Also, because of the threat of equitable mootness if my case is dismissed, the requirement of showing some irreparable injury. In re Gen. Motors, 409 B.R. at 31 showed that "the threat of equitable mootness is enough to satisfy the requirement of showing some irreparable injury"); In re Adelphia, 361 B.R. at 347 (emphasis in original) ("Where the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied.").

150.    I ask for the assistance of the court in using its discretion to simply preserve the status quo in order to avoid the cost, the effort, the threat of mootness, the threat of the permanent loss of rights upon dismissal due to statute of limitations issues, that would occur absent a stay. I ask for mercy from the court to just give me a chance to present my appeal fully to the first circuit and to have the

first circuit rule upon the applicability of the automatic stay, before allowing any further event or acts, especially dismissal, to take place in the state court case.

## C. LACK OF IRREPARABLE HARM TO DEFENDANTS

151.    Defendants will not be irreparably harmed by a stay pending appeal.

152.    The only harm that the Harvard defendants have pointed to is the indignity and stigmatization of the defendants by the mere existence of my complaint being allowed to remain in the legal system. But this is not the type of harm that rises to the level of irreparable injury. See Sampson v. Murray, 415 U.S. 61, 90 (1974). It is well settled that reputational damage, in this kind of context, falls far short of being "irreparable injury". (See Sampson, 415 U.S. at 88, 91-92). The harm defendants have alleged in their declarations is precisely the kind of harm "Sampson" says is insufficient.

153.    Moreover, as stated previously, the Harvard defendants could have avoided the situation of having me file this complaint and pursue this matter in court. I sent them a 93A demand letter months before serving them with my complaint and they had ample time to address my concerns but instead they did nothing to resolve the matter. They were put on notice that a lawsuit was coming and could be avoided by an attempt to settle and resolve the matter as mandated by the 93A statutes. But again they not only did nothing to resolve the matter but they canceled a meeting with Dean Lambert that was setup to try to resolve the matter. Beyond that, I had been attempting informal resolution for years but was ignored or rebuffed. Now that I filed the complaint in court and the matter is working its way through legal process, they complain about the mere existence of the complaint in the legal system.

154.    The defendants "cannot rely on [their] own [in]action[] to create the risk of irreparable injury." Vantico Holdings, S.A. v. Apollo Management, LP, 247 F.Supp.2d 437, 454 (S.D.N.Y. 2003).

155.   If the Harvard defendants now want to insist that delay will cause irreparable harm, it needs to explain why it never thought it necessary to dispose of this matter via informal means when it had the chance to do so, why it ignored my 93A demand letter, why it canceled the meeting with me and Dean Lambert to settle or resolve this matter back in the Spring/Summer of 2015, and why it allowed my concerns to linger within the school system for several years without taking them seriously or without addressing them, them and why it sought to remand the case back to state court, when leaving it in federal court would have resulted in the case moving more quickly than it did when it got back to state court.

## D. PUBLIC INTEREST AND HARM TO THE STATE

156.   The purpose of a stay pending appeal is merely to preserve the relative positions of the parties until appeal can be determined. A stay is necessary to maintain the balance pending appeal, allows a further decision on the applicability of the automatic stay. The public will be harmed if a stay is not allowed because the appeal addresses a key issue that pro se bankruptcy litigants may face from time to time. There is a strong public interest in resolving these questions of law. Moreover, there is a due process and thus constitutional issue at stake which goes to the interest of the public. It is only right for the status quo to be maintained during the process of appeal.

157.   A stay pending appeal serves the public interest in allowing an orderly appellate process to proceed while these substantial issues are resolved.

158.   This Court should weigh the impact of a stay on the public against the harm to movant from its denial (other courts have found that a sacrifice of the interests of employees, retirees, dealers and suppliers to further appellants' ability to avoid mootness argument to be an intolerable result). Courts also vary in application of these factors – some require a solid showing that each of the four factors has been satisfied, while others place greater weight on a balancing 12 of the hardships. See In re Adelphia, 361 B.R. at 346-47 ("A number of lower courts within the Second Circuit have

concluded that the failure of the movant to satisfy any one of the four factors on a motion for a stay

pending appeal of a bankruptcy court order 'dooms the motion.' However, the Second Circuit has

never articulated such a rigid rule of law. To the contrary, the Second Circuit has consistently

treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be

weighed."); In re Gen. Motors, 409 B.R. at 30 (noting that the Second Circuit has used both the

strict standard that all four criteria must be satisfied and balancing test, but assuming the balancing

approach to be more appropriate); In re Genesis Health, 367 B.R. at 519 (movant must make a

showing of each factor, but none of the factors are determinative and courts must balance all of the

factors in decision).

### E. THE BALANCE OF THE EQUITIES FAVORS THE DISTRICT

159.    The balance of the equities here favors a stay, which would preserve the status quo and allow

for an orderly process, including appellate review.  The fact that this particular legal issue

previously has not been addressed squarely by any controlling court militates in favor of a stay

pending appeal. See Citizens for Responsibility & Ethics in Wash. v. Cheney, 577 F.Supp.2d 328,

338 (D.D.C. 2008) (preliminary injunction granted where movant presented "a complex issue of

first impression"); Ctr. for Int'l Environmental Law, 240 F.Supp.2d at 22–23 (stay warranted, inter

alia, where "case presents an issue of first impression"); see also Klayman, 957 F.Supp.2d at 43–-

15- 44 (sua sponte staying preliminary injunction pending appeal, in light of, inter alia, "the

novelty of the constitutional issues"). The balance of the equities favors the issuance of a stay.

### F. DOCTRINE OF EXCLUSIVE JURISDICTION (THE DIVESTITURE RULE)

160.    The general rule is that "only one tribunal handles a case a time." Apostol v. Gallion, 870 F.2d

1335, 1337 (7th Cir. 1989). A timely-filed notice of appeal immediately acts to transfer jurisdiction

from the lower court to the appellate court with regard to any matters involved in the appeal and

directs the lower court of jurisdiction to proceed nofurther with such matters. Griggs v. Provident

Consumer Disc. Co., 459 U.S. 56, 58 (1982); see also Bialac v. Harsh Inv. Corp. (In re Bialac), 694

F.2d 625, 627 (9th Cir. 1982); Nat'l Labor Relations Bd. v. Cincinnati Bronze, Inc., 829 F.2d 585,

588 (6th Cir. 1987); DiCola v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n (In re Prudential Lines,

Inc.), 170 B.R. 222, 234 (S.D.N.Y. 1994), appeal dismissed, 59 F.3d 327 (2d Cir. 1995); Venen v.

Sweet, 758 F.2d 117, 120 (3d Cir. 1985). These same legal principles apply to appeals of

bankruptcy court orders. In re Prudential Lines, 170 B.R. at 243 (citing BANKRUPTCY

DESKBOOK, Harvey M. Lebowitz, Practicing Law Institute (1986)); In re Bialac, 694 F.2d at

627; Bryant v. Smith (In re Bryant), 175 B.R. 9, 13 (W.D. Vir. 1994); In re Winimo Realty Corp.,

270 B.R. 99, 105 (Bankr. S.D.N.Y. 2001).

161.    The divestiture rule is founded upon a concern for ensuring the integrity of the appellate

process by prohibiting a lower court from taking any action that interferes with the appeal process

or with the jurisdiction of the appellate court. In re Prudential Lines, 170 B.R. at 243; see also

Apostol, 870 F.2d at 1337 ("Someone must be in charge of a case; simultaneous proceedings in

multiple forums create confusion and duplication of effort; the notice of appeal and the mandate

after its resolution avoid these by allocating control between the forums.").

162.    If a stay is not entered on this case, the case and the issues will be split into multiple forums

creating confusion and duplication of effort.

163.    In this case, I made a request to stay the state court case pending appeal to the First Circuit and

the state court blatantly denied it without explanation.

164.    The failure to obtain a stay pending appeal may, in certain cases, result in the loss of an

appellant's right to have a lower court's decision reviewed on appeal. Even where an appeal is not

mooted by implementation of an order, a losing party's interest can be adversely affected absent a

stay.

## IX. THE COURT IMMEDIATELY SHOULD ISSUE AN ADMINISTRATIVE STAY

165.    The appellant further requests that the First Circuit Court immediately issue an administrative

stay that stays the proceedings in state court while the First Circuit reviews whether the automatic

stay should be applied or extended to my case, and if necessary the First Circuit, considers whether

to grant a full stay pending appeal. Granting an administrative stay would minimize unnecessary

disruption and confusion. If no administrative stay were issued, for instance, the state court might

dismiss the case while this motion to stay is pending before this Court. If this Court were to grant

the appellant's motion and issue a stay, the plaintiff could suffer irreparable harm in that the

harmless error doctrine could be used to deny him on appeal even if the First Circuit finds the

automatic is applicable to this case. Given that the state court proceedings on the motion to stay

likely will be brief, the requested relief is warranted.

## X. CONCLUSION

166.    Wherefore, I request the following:

    a.  That the Court grants this stay pending appeal.

    b.  If the Court does not grant stay pending appeal, I then request that a temporary stay be
        allowed until the court reaches a decision regarding the show cause order for Case #16-
        1977.

    c.  If there are any defects, I request instruction on how to cure.

    d.  In the alternative, I hereby request that a writ of mandamus be issued to apply the
        automatic stay to the state court proceeding or apply a stay pending appeal to the first
        circuit.

WHEREFORE, I hereby humbly request this Honorable Court grant my request and/or other relief that

the Court deems just and proper.

Respectfully submitted,

_____

Plaintiff Andre Bisasor
119 Drum Hill Rd, #233
Chelmsford MA 01824
781-492-5675

Dated: November 8, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on this date, upon information and belief, the Court's ECF system will serve an electronic copy of the foregoing upon the following counsel of record:

William Mekrut

Murphy & Riley P.C.

101 Summer Street

Boston, MA 02110


Joseph P. Dever, Esquire

Riley & Dever, P.C.

Lynnfield Woods Office Park

210 Broadway, Suite 101

Lynnfield, MA 01940-2351


I further certify that on this date, I caused a copy of the foregoing to be served upon each of the following non-ECF registered parties:

Ken Vedaa, pro se

16970 Highland Cir

Paeonian Springs, VA 20129


Mr. Slavenskoj Slavenskoj, pro se

2 Greenough Ave., #8

Boston, MA 02130


_____
Plaintiff Andre Bisasor
119 Drum Hill Rd, #233
Chelmsford MA 01824
781-492-5675

Dated: November 9, 2016